THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KENNETH SMITH, Defendant-Appellee.

(Nos. 60297-98 cons.; )

First District (4th Division)—August 13, 1975.

Rehearing denied September 10, 1975.

424

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and John T. Theis, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Anthony Pinelli and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from an order entered by the Circuit Court of Cook County granting defendant's motion to quash a search warrant and suppress evidence seized pursuant to that warrant. The State brings this appeal in accordance with Supreme Court Rule 604(a)(1).

The issues presented on appeal are (1) whether defendant, as a subscriber of Illinois Bell Telephone Company, impliedly consented to that company's recordation of the long-distance telephone numbers dialed from defendant's telephone; (2) whether 18 U.S.C. § 2511(2)(a)(i) authorized Illinois Bell to ascertain the long-distance numbers dialed from defendant's telephone; (3) whether 47 U.S.C. § 605 protects the defendant; and (4) whether Illinois Bell violated the Illinois eavesdropping statute (Ill. Rev. Stat. 1973, ch. 38, §§ 14—1, 14—2), by ascertaining the long-distance numbers dialed from defendant's telephone and subsequently disclosing that information to the State's Attorney's office.

On May 8, 1973, John Connolly, an agent of Illinois Bell Telephone Company, swore out a complaint for a search warrant for the person

of defendant, Kenneth Smith, and the second-floor apartment at 3531 West Melrose, Chicago, Illinois. The complaint requested permission to seize "any and all machines, devices, contrivances, equipment and documents" use to obtain telephone service with intent to defraud Illinois Bell. The complaint stated the defendant subscribed to an Illinois Bell telephone number at 3531 West Melrose. The complaint further stated that defendant had placed long-distance telephone calls without being charged for them by use of a device which mechanically reproduces tones which allow the user (defendant) to bypass normal telephone company billing procedures. Illinois Bell had determined defendant's illegal use of his telephone by placing a device on defendant's line which ascertained the long-distance numbers illegally dialed from his telephone. The device did not intercept any oral communication. Illinois Bell ascertained the long-distance numbers dialed from defendant's telephone without the knowledge of any governmental agency. The company contacted the State's Attorney's office after acquiring that information.

On February 13, 1974, defendant filed a motion to quash the search warrant and suppress the evidence obtained pursuant to the warrant. On February 14, 1974, following arguments by both sides, the trial court granted defendant's motion. The State now appeals from the granting of that motion.

The State first contends the defendant, as a subscriber of Illinois Bell Telephone Company, impliedly consented to that company's recordation of the long-distance telephone numbers dialed from defendant's telephone. Defendant argues the monitoring by Illinois Bell was for the specific purpose of gathering evidence of a statutory violation, and was not consented to by defendant.

Defendant was a subscribed to an Illinois Bell telephone number. On his telephone, defendant used a "blue box," a device which mechanically reproduced dial tones which allowed defendant to bypass normal Illinois Bell billing procedures. Defendant's telephone, like every telephone in the Illinois Bell system, contained a device which produces a print-out of telephone numbers dialed from subscriber's telephone. This print-out indicates deviations from normal telephone usage. When the print-out from defendant's telephone indicated unusual activity, Illinois Bell placed a device on defendant's telephone line which ascertained the long-distance numbers illegally dialed from defendant's telephone. Illinois Bell used the device to determine whether defendant was properly using his telephone in order that the company could receive compensation from defendant for his use of the company's service.

■■ In the case of *Bubis v. United States* (9th Cir. 1967), 384 F.2d 643,

648, wherein the defendant, as in the instant case, used a device to circumvent the telephone company's automatic record-keeping equipment, thereby avoiding long-distance charges, the United States Court of Appeals, Ninth Circuit, held:

> "When a subscriber of a telephone system uses the system's facilities in a manner which reasonably justifies the telephone company's belief that he is violating his subscription rights, then he must be deemed to have consented to the company's monitoring of his calls to an extent reasonably necessary for the company's investigation."

In *Brandon v. United States* (10th Cir. 1967), 382 F.2d 607, the United States Court of Appeals, Tenth Circuit, in affirming defendants' convictions for conspiracy and for defrauding the telephone company of long distance charges by use of a device to circumvent the telephone company's billing equipment, stated:

> "[O]ne who directly dials a distant number impliedly agrees that the telephone company may use the means necessary to ascertain where the call originated, the number called, and the duration of the conversation, in order that the proper charge may be recorded. * * *
>
> * * *
>
> "* * * one who fraudulently by-passes the billing mechanism has no legal standing to attack any reasonable procedure the telephone company takes to protect itself."

We conclude the defendant in the present case impliedly consented to Illinois Bell's recording of the long-distance numbers dialed from his telephone.

The State next contends 18 U.S.C. § 2511(2)(a)(i) authorized Illinois Bell security personnel to ascertain the long-distance numbers dialed from defendant's telephone, and disclose that information to the State's Attorney's office. The defendant maintains the monitoring procedure utilized by Illinois Bell was not authorized by 18 U.S.C. § 2511(2)(a)(i).

18 U.S.C. § 2511(2)(a)(i) (1974 Supp.) reads as follows:

> "It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication: *Provided,* That said com-

munication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks."

In *Nolan v. United States* (10th Cir. 1969), 423 F.2d 1031, 1044, *cert. denied*, 400 U.S. 848 (1970), the United States Court of Appeals, Tenth Circuit, held that toll fraud detection by telephone company employees is in the normal course of their employment and authorized by 18 U.S.C. § 2511(2)(a)(i). The court stated:

> "The perpetration of toll frauds on the telephone company's direct dialing and billing machinery has required monitoring of telephone lines by employees to detect the illegal users and to fulfill the company's statutory duties to the Government and to its customers."

In *Hanna v. United States* (5th Cir. 1968), 404 F.2d 405, *cert. denied*, 394 U.S. 1015 (1969), a case involving toll fraud by use of a "blue box," the United States Court of Appeals, Fifth Circuit, held that limited recordings of conversations and recordation of long distance numbers dialed is necessary to protect the telephone company's rights and property. After noting the statutory duties of the telephone company, the Court stated:

> " * * * there is no alternative in this state of the art but to make a limited recording of each illegal call—at least of the fraudulent dialing and opening salutations—to: (i) identify the calling party (the user of the blue box) * * * (ii) establish the location from which the calls are originating * * *
> (iii) record the multifrequency tones being "dialed" (key pulsed) by the blue box; and
> (iv) determine whether the fraudulent call was completed (by the called party answering). * * *" 404 L.2d 405, 407.

■■ At the hearing in the present case, the security manager for Illinois Bell testified that service observing by the company is merely to observe the quality of telephone service in order to detect and rectify personal or mechanical failure. The Illinois Bell security manager recorded only the number of dial tones which were abnormal and indicated illegal use. Illinois Bell's investigation therefore did not constitute service observing or random monitoring under 18 U.S.C. § 2511(2)(a)(i). In *United States v. DeLeeuw* (E.D. Wis. 1974), 368 F. Supp. 426, 428, the United States District Court, Eastern District of Wisconsin, upheld not only activity identical to that of Illinois Bell in the present case, but the recording of actual conversations as well. The court therein stated:

> "I believe that the action taken by the telephone company security supervisor in attaching a 'blue box' detector to the defen-

dant subscriber's line, which device recorded the numbers dialed, and conversations had on such line in only those instances where a 'blue box' frequency was actually applied thereto, constituted the type of nonrandom monitoring for the protection of property which is sanctioned by 18 U.S.C. § 2511(2)(a)(i)."

The nonrandom, nonservice observing recordation of long-distance numbers dialed by defendant was therefore necessary to Illinois Bell's rendering of telephone service, and was necessary to protect the rights and property of the company. Such monitoring was therefore authorized by 18 U.S.C. § 2511(2)(a)(i).

The State's third contention is that 47 U.S.C. § 605 does not protect the defendant, since he illegally placed long-distance telephone calls by using a "blue box" to bypass Illinois Bell billing procedures. Defendant maintains Illinois Bell violated 47 U.S.C. § 605.

▉ 47 U.S.C. § 605 (1975 Supp.) provides, in pertinent part, as follows:

"[N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority."

It is well established that 47 U.S.C. § 605 does not protect a defendant who illegally uses communications facilities. In the landmark case of *United States v. Sugden* (9th Cir. 1955), 226 F.2d 281, 284, 285, *aff'd*, 351 U.S. 916 (1956), the United States Court of Appeals, Ninth Circuit, held:

"The purpose of Section 605 is generally said to be to protect the 'means' of interstate communication.

\* \* \*

To throw a mantle of protection provided by Section 605 over an outlaw broadcast is to abandon reason. Therefore, we hold that as to private radio communications, before any right of privacy exists under Section 605 the voice must be legally on the air; otherwise one who hears, and especially the Federal Communications Commission, may make full disclosure. Giving the one who

broadcasts without authority any protection under Section 605 could not tend to protect the means of communication."

In *Hanna v. United States* (1968), 404 F.2d 405, 408, *cert. denied,* 394 U.S. 1015 (1969), the United States Court of Appeals, Fifth Circuit, stated:

"No sound distinction as to the applicability of section 605 can be drawn between wire and radio. The original statute, written in almost identical terms, applied only to radio communications. Act of Feb. 23, 1927, ch. 169, sec. 27, 44 Stat. 1162, 1172. Those provisions were extended to wire communications by section 605 without any distinction being made between the two methods of communication. It must, therefore, be conceded that when the use of the communication facility itself is illegal, section 605 has no application, at least insofar as concerns the person guilty of such illegal users. Whatever we might otherwise think, this Court is bound by the *Sugden* decision."

Defendant in the instant case illegally used a "blue box" to place long distance calls and bypass Illinois Bell's billing procedures. Clearly, then, he was not protected by 47 U.S.C. § 605, and the trial court erred in quashing the search warrant.

The State finally contends Illinois Bell did not violate the Illinois eavesdropping statute (Ill. Rev. Stat. 1973, ch. 38, §§ 14—1, 14—2), by ascertaining the long distance numbers dialed from defendant's telephone and subsequently disclosing that information to the State's Attorney's office.

■■ We agree with the State's contention. The provisions of the Illinois eavesdropping statute (Ill. Rev. Stat. 1973, ch. 38, §§ 14—1, 14—2) define an eavesdropping device as "any device capable of being used to hear or record oral conversation whether such conversation is conducted in person, by telephone, or by any other means." The record in the present case clearly reveals Illinois Bell recorded no oral conversations. The defendant introduced no evidence at the hearing to indicate the equipment used by Illinois Bell was capable of recording oral conversations. Because Illinois Bell did not use any eavesdropping device, it could not be found guilty of eavesdropping. Therefore, the company's disclosure of the illegally dialed long distance numbers did not violate the provisions of the Illinois eavesdropping statute.

For the reasons stated herein, the judgment of the Circuit Court of Cook County is reversed.

Reversed.

ADESKO and BURMAN, JJ., concur.