THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KENNETH SMITH, Defendant-Appellant.

First District (2nd Division)   No. 78-78

Opinion filed May 29, 1979.

James J. Doherty, Public Defender, of Chicago (Anthony Pinelli, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Dewey Roscoe Jones, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant Kenneth Smith was charged with "intent to defraud" the Illinois Bell Telephone Company (Ill. Rev. Stat. 1973, ch. 134, par. 15c(c)) after police searched defendant's apartment and recovered a "blue box" device.[1] On February 14, 1974, the court sustained defendant's motion to quash the warrant authorizing the search of defendant's apartment. On February 25, 1974, the State filed notice of appeal and the trial court's order quashing the warrant was reversed by the appellate court on August 13, 1975.[2] Defendant's petitions for leave to appeal to the Illinois Supreme Court and for a writ of certiorari to the United States Supreme Court were denied, and the cause was set for trial.

At trial held on October 22, 1976, defendant was found guilty of "intent to defraud" and was sentenced to two years probation and ordered to pay $1000 restitution. Defendant appeals.

The issues presented for review are (1) whether the prior appellate court decision of August 13, 1975, upholding the search warrant precludes further challenge to the warrant; (2) whether the search warrant failed to meet the constitutional requirements for the establishment of probable cause; (3) whether the search warrant was invalid because it allegedly failed to describe with sufficient particularity the items to be seized; (4) whether the warrant was predicated upon evidence allegedly obtained in violation of defendant's right to privacy granted by the Illinois Constitution; and (5) whether the State failed to prove defendant guilty beyond a reasonable doubt.

We affirm.

On May 8, 1973, John Connally, a security representative for Illinois Bell Telephone Company, executed a complaint for a search warrant for the person of Kenneth Smith and for the second floor apartment at 3531 West Melrose, Chicago, Illinois. Connally's affidavit alleged the following:

---

[1] A "blue box" device is described in the record as a multifrequency tone generator which allows a party to complete long distance toll calls without charge. The device causes the calls to bypass the telephone company's billing system, and the calls are reflected as toll-free number usage.

[2] *People v. Smith* (1st Dist. 1975), 31 Ill. App. 3d 423, 333 N.E.2d 241.

"The above named person is the subscriber to telephone #539-7242 at the above address. The use of this telephone number has been mechanically observed to determine its usage by the complainant for approximately two weeks prior to 6 May 1973. This mechanical observation has revealed that long distance telephone calls placed by the user and only listed occupant of the apartment in question. These long distance calls are being made without being charged to the user's (Smith's) bill by use of a device which mechanically reproduces tones which allow the user (Smith) to bypass normal telephone billing procedures. The affiant has expertise and personal knowledge of the device being used by said Kenneth Smith and based on this expertise and personal knowledge obtained through Telephone Companies mechanical observation and recordation of phone calls dialed on the said user's (Smith's) telephone swears under oath that the said Kenneth Smith is defrauding the Illinois Bell Telephone Company of the lawful charges."

On May 8, 1973, based on the above affidavit, a search warrant was issued for the person of Kenneth Smith and the apartment. The warrant authorized seizure of "any and all machines, contrivances, devices, equipment and documents which have been used in the commission of or which constitute evidence of the offense of obtaining service with intent to defraud in violation of I.R.S. Chapter 134, 15c, §1(c)." Chicago Police Officer John Jennings executed the warrant on May 8, 1973, and seized a "blue box" from defendant's apartment. A complaint was then filed charging Kenneth Smith with defrauding Illinois Bell Telephone Company.

On February 13, 1974, defendant filed a motion to quash the search warrant and to suppress evidence, alleging that Connally's affidavit failed to demonstrate probable cause for issuance of the search warrant, and that the warrant lacked a sufficient description of the property that was to be seized. Defendant also alleged that Illinois Bell had obtained evidence in violation of the Federal wiretap law. 47 U.S.C. §605 (1970).

On February 14, 1974, the trial court sustained defendant's motion to quash the warrant, finding that Illinois Bell had obtained evidence by monitoring defendant's telephone line in violation of Federal wiretap laws. The State appealed the trial court's finding and on August 13, 1975, the Illinois Appellate Court reversed, finding no violation of the Federal wiretap law. The court did not address the issues of probable cause or sufficiency of the description of the items to be seized, which issues were raised in the parties' appellate briefs. Defendant raised these again in his petition for rehearing, which was denied September 2, 1975; in a petition for leave to appeal, which was denied by the Illinois Supreme Court on

October 16, 1975; and in a petition for writ of *certiorari,* which was denied by the United States Supreme Court. (*Smith v. Illinois* (1976), 425 U.S. 940, 48 L. Ed. 2d 183, 96 S. Ct. 1678.) The cause was then remanded for trial.

On October 4, 1976, defendant filed a second motion to quash the warrant, alleging that: (1) the affidavit in support of the warrant lacked probable cause, (2) the warrant failed to describe with particularity the property to be seized, and (3) the warrant was predicated upon evidence seized in violation of the Illinois Constitution. The trial court denied defendant's motion, and the cause was set for trial.

At trial held on October 22, 1976, John Connally, a security representative for Illinois Bell, testified to the following: In reviewing the March 1973 billing for toll-free calls made by Illinois Bell subscribers, Connally observed that defendant's number (539-7242) indicated an unusual number of lengthy telephone calls directed to toll-free numbers. Connally installed a "dialed number recorder." (Hekimian device) on defendant's telephone line at the Illinois Bell office. The "dialed number recorder" prints the numbers dialed on a party's telephone and indicates whether a party is using a "blue box" device to bypass the telephone billing procedures. The "blue box" or "multi-frequency tone generator" is a device which permits the caller to make long distance calls to any number, while the phone company's equipment indicates that the caller is dialing a toll-free "800" number. A caller dialing an "800" number is not charged for a toll call; however, the calls are reflected as a credit on records maintained by Illinois Bell. Connally had detected and caused the arrest of over 100 persons for "blue box" usage, and he stated that the "Hekimian device" was designed exclusively to detect "blue box" usage.

The "Hekimian device" was removed from defendant's telephone line on April 24, 1973, but the device was reconnected on April 30, 1973, and it monitored defendant's telephone line through May 3, 1973. During the period the device was connected to defendant's line, the device indicated the "blue box" was used on more than eight occasions to complete toll calls that would not be billed to defendant.

On May 8, 1973, Connally signed a complaint for a search warrant which was issued by Judge Joseph Power. Later that same evening Connally installed the "Hekimian device" on defendant's telephone line. At 8:09 p.m. the device indicated that a "blue box" call was being made. Connally then so informed his supervisor Mr. Kitzinger and Chicago Police Officer Jennings.

Robert Kitzinger, security manager for Illinois Bell, testified to the following: On the evening of May 8, 1973, Kitzinger and Officer Jennings were outside defendant's apartment building awaiting a radio call from

Connally that the detection equipment indicated use of a "blue box." After receiving such a call, Kitzinger and Jennings attempted to serve the search warrant but they were denied access to the apartment by defendant. After forcing their way into the apartment, Kitzinger observed defendant, two other men, one of whom was "on the telephone," and a "blue box" on a table near the telephone. No other telephones were found in the apartment.

Chicago Police Officer John Jennings testified to the following: On May 8, 1973, Jennings attempted to execute a search warrant at 3531 Melrose. Jennings announced to defendant that he was a police officer, and defendant "slammed" the door. After forcing his way into the apartment, Jennings recovered a "blue box" device from a table near the telephone. Jennings testified that he was familiar with the "blue box" device because as a liaison officer assigned to Illinois Bell for a period of one year, Jennings had observed approximately 30 "blue boxes."

It was stipulated at trial that between the period March 29, 1973, and April 28, 1973, defendant was the sole subscriber to telephone number 539-7242. It was also stipulated that during that period, a credit of $7.10 for toll calls was reflected on the company's records for the telephone number 539-7242.

I.

■■ The State contends that defendant is precluded from raising any issue concerning the validity of the search warrant because such validity was upheld in a prior decision of the appellate court. (*People v. Smith* (1st Dist. 1975), 31 Ill. App. 3d 423, 333 N.E.2d 241.) While it is true that an appellate court should not relitigate issues that have already been briefed, argued and decided in a prior appeal of the same case (*United States v. Battaglia* (7th Cir. 1970), 432 F.2d 1115, 1118; *United States v. Hoffa* (7th Cir. 1968), 402 F.2d 380, 387), the determination of the issue must be final and on the merits to be conclusive on the parties in the subsequent appeal. See *Hall v. Hall* (4th Dist. 1976), 43 Ill. App. 3d 97, 98, 356 N.E.2d 1156.

In the case at bar the appellate court reversed the trial court's decision to quash the warrant, determining that Federal wiretap laws were not violated. However, the appellate court did not address other issues briefed and argued by both parties concerning the validity of the warrant. In defendant's petition for rehearing, his petition for leave to appeal to the Illinois Supreme Court, and his petition for a writ of *certiorari* to the United States Supreme Court, he alleged the issues of (1) lack of probable cause, (2) failure to sufficiently describe the items to be seized, and (3) violation of the Illinois Constitution. Although these petitions were denied by the respective courts, no court of review has specifically ruled on the merits of the issues raised by defendant in this appeal.

■■ ■ The State contends that collateral estoppel or law of the case[3] should apply in the case at bar. Law of the case and collateral estoppel apply only when between the same parties an issue of ultimate fact has already been determined by a valid and final judgment. (See *People v. Williams* (1st Dist. 1974), 17 Ill. App. 3d 285, 292, 308 N.E.2d 39.) We believe that neither theory would apply here to preclude the trial court from deciding or this court from reviewing issues not previously decided. In fact, it has been held that matters which were presented to, but were not decided by an appellate court could be relitigated upon remand. *Foreman v. Martin* (2d Dist. 1975), 26 Ill. App. 3d 1028, 325 N.E.2d 378; *Hurst v. Papierz* (1st Dist. 1973), 16 Ill. App. 3d 574, 306 N.E.2d 532, *cert. denied sub nom. Papierz v. Rauth* (1974), 419 U.S. 835, 42 L. Ed. 2d 62, 95 S. Ct. 62.

■ In the case at bar we note that it was the State that filed the initial appeal contending that there was no violation of Federal laws. Although the State prevailed on that issue in the appellate court, defendant would have had no reason to raise other issues in that appeal since he had prevailed in the court below. The only matter before the appellate court or the Illinois and United States Supreme Courts was whether the warrant was obtained in violation of Federal law. Thus, we find defendant is not precluded from raising issues pertaining to the warrant, which issues had not been decided in the prior appeal.

II.

Defendant contends that the affidavit for the warrant failed to meet constitutional requirements for establishment of probable cause. Defendant argues that Connally's affidavit was inadequate because it failed sufficiently to set forth Connally's reliability and the underlying circumstances supporting Connally's conclusion that defendant was using his telephone to place illegal calls.

To support the issuance of a search warrant, facts must be related which would cause a reasonable man to believe that a crime had been committed and that evidence was in the place to be searched. (*People v. Krug* (5th Dist. 1976), 38 Ill. App. 3d 383, 385, 347 N.E.2d 807.) The court must interpret and test the supporting affidavit in "a common sense and realistic fashion." (*People v. Philyaw* (2d Dist. 1975), 34 Ill. App. 3d 616, 619, 339 N.E.2d 461.) The affidavit need only establish probable cause, not proof beyond a reasonable doubt. *People v. Wilson* (1st Dist. 1975), 27 Ill. App. 3d 535, 327 N.E.2d 146 (abstract).

■■■ The cases cited by defendant are inapposite because they involve

---

[3] The doctrine of "law of the case" expresses the rule that a final judgment of the highest court is a final determination of the parties' rights. The decision, judgment, opinion or rulings on a former appeal become the "law of the case." Black's Law Dictionary 1030 (4th ed. 1968).

affidavits executed by police officers based on information received from informants. In such cases, reliability of the informant is an issue. In the case at bar, however, the complaint for the warrant was executed by Connally as an agent for Illinois Bell and as a private citizen, and it was based on his personal observation and knowledge. Where the informant himself is the affiant to the complaint and he recites facts that he observed, a showing of the reliability of the informant is not constitutionally required. (*People v. O'Neal* (1st Dist. 1976), 40 Ill. App. 3d 448, 352 N.E.2d 282, *cert. denied* (1977), 431 U.S. 969, 53 L. Ed. 2d 1065, 97 S. Ct. 2929.) Thus, we find that the warrant was not invalid for failure to establish Connally's reliability. Further, we find that the court was presented with sufficient facts on which it could find there was probable cause to issue the search warrant.

### III.

Defendant contends that the search warrant was invalid because it failed to describe with sufficient particularity the items to be seized. We disagree. The warrant directed the seizure of "any and all machines, devices, contrivances, equipment and documents which have been used in the commission of, or which constitute evidence of the offense of obtaining service with intent to defraud."

In the case at bar, Connally's affidavit indicated that he had mechanically observed that calls were being made on defendant's phone with the assistance of a "blue box" device. Although Connally had seen over 100 "blue box" devices during his career, he had not previously observed the particular device used by defendant.

In *People v. Curry* (1973), 56 Ill. 2d 162, 306 N.E.2d 292, the supreme court upheld the validity of a search warrant where the warrant contained a general description of items to be seized "in desk drawers and other places" in an office allegedly relating to a "call girl" operation. The court held that where property of a specific nature is to be seized, a description of the characteristics of the property is sufficient. In *People v. Miller* (5th Dist. 1975), 36 Ill. App. 3d 542, 345 N.E.2d 1, a search warrant was held valid where it described items to be seized as "stolen vehicles and vehicles or parts of vehicles with the manufacturer's identification numbers altered or removed." The court held that even though the warrant did not specify types, makes, or models of vehicles to be seized, the warrant was as particular as it could be under the circumstances, as the items had not been observed and could not otherwise be described or with more particularity. We believe that the description in Connally's affidavit of the particular characteristics of the "blue box" was sufficient to describe with particularity the property to be seized. We note also that Officer Jennings, who served the warrant, was familiar with "blue box" devices.

## IV.

Defendant contends that Illinois Bell violated his constitutional right to privacy granted by the Illinois Constitution. Defendant alleges that this violation resulted from the telephone company's attachment of the "dialed number recorder" to his telephone line to ascertain what long distance calls were being completed and the numbers that were dialed. Article I, section 6 of the Illinois Constitution provides as follows:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. * * *"

██ We find that the action taken by Illinois Bell in the case at bar did not violate any rights guaranteed to defendant under the Illinois Constitution. As the appellate court noted in the prior apeal concerning the search warrant (*People v. Smith*, at 425), defendant's telephone, like every other subscriber's phone in the Illinois Bell system, contained a device which produces a printout of the long distance numbers dialed from a subscriber's phone. This printout indicates deviations from normal telephone usage. If such activity is indicated, Illinois Bell places a "dialed number recorder" on the line to ascertain "blue box" usage. The appellate court noted that the company does not monitor the conversations but only records the numbers dialed, and citing *Bubis v. United States* (9th Cir. 1967), 384 F.2d 643, the court held that as a subscriber, defendant impliedly consented to Illinois Bell's recording of long distance numbers dialed on his telephone. *Smith*, at 426.

Furthermore, we note that Connally was an employee of Illinois Bell using the "Hekimian device" to ascertain whether the telephone company was receiving just compensation from defendant for the use of his telephone. As such, Connally was not a police officer, nor was he acting as an agent of the law.

Evidence seized by a person who does not act as an instrument or agent of the police is not constitutionally protected under the fourth amendment to the United States Constitution. (*People v. Heflin* (2d Dist. 1976), 40 Ill. App. 3d 635, 646, 351 N.E.2d 594.) Also, the Committee Reports cited in the Constitutional Commentary accompanying article I, section 6 of the Illinois Constitution indicate that this provision creating a right to freedom from invasions of privacy applies only to invasions of privacy by government or public officials. Ill. Ann. Stat., 1970 Const., art. I, §6, Constitutional Commentary, at 317-18 (Smith-Hurd 1971).

## V.

Defendant's final contention is that he was not proved guilty beyond a reasonable doubt of obtaining service with intent to defraud, in

violation of "An Act relating to defrauding persons * * * for telecommunications service * * *" (Ill. Rev. Stat. 1973, ch. 134, par. 15c(c)). The statute prohibits both the use of a device to defraud, and the aiding and abetting of one using such a device. The statute provides in pertinent part:

> "1. Any individual, corporation, or other person, who, with intent to defraud or to aid and abet another to defraud any individual, corporation, or other person, of the lawful charge, in whole or in part, for any telecommunications service, shall obtain, or attempt to obtain, or aid and abet another to obtain or to attempt to obtain, any telecommunications service:
>
> ✻ ✻ ✻
>
> (c) by use of a code, prearranged scheme, or other similar stratagem or device whereby said person, in effect, sends or receives information, * * *
>
> ✻ ✻ ✻
>
> shall be deemed guilty of a Class A Misdemeanor."

In the case at bar the record establishes that defendant was the subscriber to telephone number 539-7242 at 3531 West Melrose and was the sole occupant of the apartment. The agreement between the telephone company and the subscriber (defendant) is that the subscriber is responsible for all calls made on his telephone. The "Hekimian device" placed on defendant's telephone evidenced positive indications of "blue box" usage and recorded eight instances where long distance calls were completed but bypassed the telephone company's billing system. On May 8, 1973, at 8:09 p.m. the "Hekimian device" indicated "blue box" usage and a "blue box" was found in defendant's apartment.

■■ A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence, and a conviction will not be reversed where the evidence is not so improbable as to raise a reasonable doubt of guilt. (See *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) We find the evidence in this case sufficient to establish that defendant was guilty beyond a reasonable doubt of violating the statute.

For the foregoing reasons we affirm the judgment of the trial court.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.